317-208 People of the State of Illinois Act Relief by Stephanie Raymond v. Robert Womack Appellant by Andrew Smith Mr. Smith May it please the Court. My name is Andrew Smith and I represent Robert Womack. The Post-Conviction Act was designed for cases like Robert's, cases where a harsh sentence has now come under constitutional scrutiny. Miller and his progeny makes clear, youth matters at sentencing. Robert Womack was a 16-year-old kid, not unlike many 16-year-olds. He had friends. He at times goofed off in class, but in other ways he was different. He was developmentally delayed and he struggled academically. He felt bullied by his classmates. After freshman year, he dropped out of high school following a car accident. On October 25, 2006, Robert was face-to-face with the neighborhood drug dealer, a 24-year-old adult named Michael McCarms, who was threatening to kill Robert and Robert's family. Robert left the party and grabbed his grandfather's gun. Now, would an adult with years of experience grab a gun under these circumstances? Would they think that grabbing a gun could lead to deadly consequences? Maybe yes, but Robert was a 16-year-old kid. Grabbing a gun under these circumstances can be somewhat understandable. He was being threatened. When Robert returned to the party, he did not confront McCarms. McCarms confronted him. McCarms approached him, gesticulating wildly and grabbing at his pants while threatening to kill Robert. In those ten seconds, Robert reacted. He pulled out his gun and fired. This was not a gang-style execution. This was not an armed robbery gone wrong. This was a rapidly escalating situation initiated by McCarms, a situation that lends itself to the type of impulsive and reckless decision-making characteristic of young people and has been recognized by the United States Supreme Court. It is in such rapidly accelerating situations that youth matters. At the time of the offense, a trial judge was required to add a 20-year gun enhancement to Robert's sentence, regardless of his age. That body of law, though, is now in doubt. Today, Robert is seeking leave to file a post-conviction petition so that the circuit court can address the following issue. Did the gun enhancement violate the Proportionate Penalty Clause as applied to Robert? To obtain leave, a petitioner must show cause and prejudice. And I want to be clear on this standard of view at this stage. Mr. Womack only needs to show, make a promissory case of cause and prejudice. He is not expected to definitively prove that his sentence violated the Proportional Penalty Clause. Under this standard, a court should only deny leave where a defendant's claim clearly fails as a matter of law. The law in this area is anything but clear. And if anything, it is trending toward invalidating these harsh firearm enhancements. I cited two cases in my brief, Barnes and Akins. Both cases addressed this issue head-on on direct appeal, and those courts invalidated the gun enhancements because those defendants were minors. This court does not need to go that far, as in Barnes and Akins, Although, for the sake of judicial efficiency, we would welcome that this just be sent back for a sentencing hearing without the mandatory gun enhancements, the court does not need to make that decision at this point. It only needs to decide whether to docket defendant's claim for a second stage post-conviction proceeding. Again, to make that decision, they do not, he only needs to make a prima facie case of cause and prejudice. Okay, what's the cause? The cause in this case, cause is a factor outside, an objective factor that could not, that impeded a defendant's ability to raise the specific issue in the initial post-conviction proceeding. And so, this was raised in 2009, he filed his post-conviction petition in 2009. Two years later, Miller came out under the United States Supreme Court, and following Miller, Barnes and Akin came out in the appellate courts, which have specifically addressed this issue in validating gun enhancements. So, this body of law was not available to defendant at that time. And the courts have specifically said that the PC Act is designed for addressing these type of constitutional changes. In Harris, the court, the issue was raised on a direct appeal, and the court said this should be sent back for a PC so that we can get evidence on the issue and decide whether this violated the as-applied proportional penalties clause. When did he file his motion for leave to file a successive PC? He filed it in 2016. So, what was the cause for the delay until 2016? He filed it, you know, let's see, Akin's came out in 2015, which invalidated the firearm enhancements, and he filed it a year later. And he raised a similar issue in a PRJ, and it was withdrawn because it wasn't the right avenue for it. And that was similar to Thompson. Thompson raised a Miller issue in a PRJ, and the court said this is not the right avenue to raise such issues. Oh, Petition for Relief from Judgment. I'm sorry. In 1401. Yeah, and that was sent back and said the best way to raise this is in a PC. So that's what we're asking to do. We're asking that the courts allow the PC Act to work here and let this go forward. As for prejudice, Mr. Womack was prejudiced because the firearm enhancement was mandated without allowing for any consideration of Robert's youth, nascent criminal background, and the mitigating circumstances of the offense. This is viewed as kind of like a Strickland test. So would the proceeding have been different had Mr. Womack been, had this case law with Miller been around when Mr. Womack raised the issue? And clearly there seems to be prejudice here. If you look at the trial judge's order who denied leave, it shows that he's uneasy with the harshness of this sentence. He talks about it being undeniably harsh. There is a sense when you read it that he feels like his hands are tied and he cannot provide any relief. He goes on for pages about the unfairness of the sentencing laws now. But his hands are not tied. This issue can be addressed on proportionate penalties clause. And so we're asking that either this court remand this case to dock it for second stage post-conviction proceeding or simply vacate the sentence and remand it for resentencing for the case of judicial efficiency. Thank you. Why second stage? Is that what, if a position is allowed in a situation like this, does it automatically go to the second stage? There are two avenues. One is typically if leave is allowed, it does go to the second stage. And at that stage, the state can raise affirmative defenses and the defendants appointed a lawyer. He didn't have a lawyer when he first filed this. And then if he gets, and it just goes forward like a normal PC at that point. If he then gets past that stage, it goes to the third stage. And there would be an evidential. It doesn't go back for first stage determination? No, it does not go back. It would be docketed for the second stage. The first stage is deciding whether or not to allow it or not, correct? The first stage, yeah. And the standard for that is whether this, there's no basis clearly in the law for that. And based on the fact that we've got cases specifically out now invalidating these things, it's hard to, it can't be said that this is totally clear that he has no basis to raise this. The law is in flux at this stage, and it is trending towards invalidating these type of mandatory sentences as applied to defendants. So based on that, we are asking it to be docketed for second stage, so that this issue can be addressed, so that the Pro-PC Act can work as it was intended. Thank you. Ms. Raymond. Your Honors. Counsel. My name is Stephanie Raymond. I'll be representing the people of the state of Illinois. I will be arguing on behalf of Chelsea Caston. This is her brief. She's no longer with the office. To establish cause in Illinois, or to establish cause under the Act, a defendant must show that, must identify an objective factor that impeded his ability to bring the claim in the first place. The lack of precedent, or the fact that he believes his claim may not be successful, does not equate to cause. Neither does unfairness. In order to establish prejudice, the claim that was not raised during the initial proceedings must so infect the trial that the conviction and sentence violates due process. Neither of those situations are present here. The trial court properly denied his motion where he could not meet the cause and prejudice test under the Act. The Illinois Proportionate Penalties Clause, in order to, in that situation, defendant must show that the penalty is degrading, cruel, or so wholly disproportionate to the offense that it shocks the moral community. In this case, that is also not present. Defendant was 16 when he committed the crime. There was an argument where he got into an argument with someone, left the argument, went and retrieved a gun, came back, shot the person multiple times, who is now paralyzed for the rest of his life. Defendant received an aggregate of 38 years, which included the firearms enhancement. At 85%, he will serve 32. Defendant will be 48 years old when he gets out of prison. That is not a de facto life sentence under Miller in its progeny, nor is that natural life without the possibility of parole, which those cases determined that those are not appropriate for people under the age of 18. That is not present in this case. So it's the people's position that the trial court properly denied defendant's motion. The cases that defendant cites for the Illinois proportionate penalties, Aikens. In Aikens, no one was injured in that case. So on a case-by-case basis under the Illinois proportionate penalties clause, they're dissimilar. Barnes, it was an armed robbery situation, also dissimilar to those. In most of the cases cited by defendant, the defendants in those cases do receive de facto or natural life sentences under Miller in his progeny, and we do not have that here. So we would ask that you just affirm defendant's conviction. I'm not sure why in that case. So I can't really answer your question. But, yeah, so I'm not sure why that is. Any other questions? Thank you. So I spoke to the defense attorney on that, and they said that it was dismissed because this attorney general in that case, didn't think there was much of a basis in the law to go forward with it. And that was what was written in their motion. And I think that they are starting to take the tack now that these sentencing schemes that have been set up in the 90s and 2000s have gone too far, and there wasn't a way to how does this work when you're applying it to juveniles. And so I think the attorney generals are recognizing that, and many of the appellate courts recognize that, including the New York Supreme Court. The state discussed that this is not a de facto life sentence. We did not say this is a de facto life sentence. We are arguing that this, we are asking that they validate the firearm enhancement. And that is the same issue that was raised in Aikens and Barnes. And the state talks about how Aikens and Barnes, they suggested that they were somehow less criminally culpable than our case. But let's recognize in those cases the defendants were committing clear crimes. One was committing armed robbery. The other one was shooting at police officers. That is very different we have here. This is a rapidly escalating situation where a defendant is being threatened, and he is 16 years old. And we have to recognize that. He had been threatened, left the party, went home, got a gun, and returned to the threat. And was that a wise decision? Probably not. But he is a 16-year-old kid, and he's faced with someone threatening him. And our U.S. Supreme Court says you carry guns to protect yourself. It's not outside the realm of reasonableness that a kid would think, I'm being threatened. I'm going to go to get my grandpa's gun in case he comes up and tries to kill me. We have to remember we're talking about a 16-year-old here. We're not talking about. But so far, hasn't all this applied in the sense of cases where the sentence ends up being a de facto life sentence? No. These are now being applied to invalidate these firearm enhancements because those enhancements are mandatory regardless of age. They are applying them. They're not looking at the mitigating circumstances or anything. They're applying them. But aren't in most cases, or at least I'm not familiar with that, and there probably are some out there, but in most cases those firearm enhancements end up pushing the cumulative sentence to a term which ends up constituting a de facto life sentence. He had 20 years on, now over the 40 years. That did not happen in Barnes, which was given a 22-year sentence. And there they invalidated it still. And so this is happening in the 1st District, the 5th District, and we're not asking, telling the court that we need to ultimately decide this issue right now. We're asking that this goes to second stage, that the act be allowed to work as it was intended to, as the Illinois Supreme Court said should work, have evidentiary hearing, let the court bring in someone to talk about the psychology of youth, get the record for the defendant, his background, his school records, let the evidentiary record be made, and then let's decide this issue. So we're not saying that the court needs to definitively decide whether this violates the Proportionate Penalties Clause at this time. Thank you, Your Honors. Thank you. I thank both of you for your arguments here this afternoon. This matter will be taken under advisement. A written disposition will be issued, and right now we'll be in recess until 9 in the morning.